[Crim. No. 10180.   In Bank.   Jan. 27, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ENRIQUE PEREZ, Defendant and Appellant.

Enrique Perez, in pro. per., and Peter G. Fetros, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws, Raymond M. Momboisse and Theodore T. N. Slocum, Deputy Attorneys General, for Plaintiff and Respondent.

BURKE, J.—A jury found Enrique Perez guilty on four counts of first degree robbery (Pen. Code, § 211a). He admitted two prior first degree robbery convictions. A motion for a new trial was denied, and he appeals from the judgment, contending that evidence of a prior robbery was improperly admitted; that the evidence is insufficient to support his conviction on counts 3 and 4; and that he did not waive

his federal constitutional privilege against self-incrimination as to two of the robberies charged by testifying on direct examination as to the other robberies charged and therefore error was committed of the type condemned in *Griffin* v. *California*, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].

*Count 1 (January 3, 1965, robbery at the Viking Club):*

About 9 p.m. on January 3, 1965, two men entered the Viking Club in Sacramento. One of them was armed with a revolver and had a glove over his mouth. After informing the bartender, Frederick Fauble, that "this was a holdup," the robbers took $325, a Bankamericard, and a Shell credit card. Defendant's fingerprints were found on a cigar box that was knocked off a shelf by one of the robbers.

Defendant admitted using the stolen Bankamericard to make various purchases and signing Fauble's name to the sales slips. He testified that one Robert Gomes gave him the card in early January after trying to sell it to him. Defendant denied having been in the Viking Club on the night of the robbery and testified that he was with his brother, Miguel, and a friend, Joseph Rosales, when the robbery was committed. His alibi was supported by testimony of Miguel and Mrs. Joseph Rosales.

*Count 2 (January 15, 1965, robbery at the Corner Market):*

About 7 p.m. on January 15, 1965, David Perez (who is not a relative of defendant) and a second man entered the Corner Market in Sacramento. Each man carried a gun and held a glove or cloth over his face covering his nose and mouth. The men demanded money from Mr. and Mrs. James Monahan, who operated the store, and took from them about $69 and a radio. Mr. and Mrs. Monahan identified defendant at the trial as the second robber. They had a momentary full face view of him on one occasion during the robbery when he dropped the covering from his face.

Defendant testified that he was at his home when the Monahans were robbed, and his alibi was supported by testimony of his brother Miguel and his mother.

*Counts 3 and 4 (January 13, 1965, robberies at Ralph's Bar):*

About 1:15 a.m. on January 13, 1965, David Perez and two other men entered Ralph's Bar, which was in the same general neighborhood as the Corner Market. One of the men carried a revolver. David Perez wore a mask, and one of his

618

companions used a handkerchief as a mask. Ray Biner, the bartender, and Eli Dragash, a patron who was partially blind, were in the bar. The robbers took $6 from Dragash and the money in the cash register. Biner and Dragash were unable to see the faces of the men who accompanied David Perez but described the height and weight of one of his companions, and the jury, of course, had an opportunity to observe defendant.

Defendant was with David Perez at the apartment of David's sister, Sylvia Moreno, about three blocks from Ralph's Bar at 1 or 1:30 a.m. on January 13, 1965, which was just before or after the robbery at that bar. The weapon used by defendant at the Corner Market robbery, clothing worn by him at that robbery, the stolen radio, and a coat worn by one of David Perez's companions at the Ralph's Bar robberies were found at Mrs. Moreno's apartment.

*Prior Collateral Robbery*

At 6:45 p.m. on November 10, 1964, two men entered the Modern Variety Store in Sacramento. Both wore stockings that covered their faces, and one carried a rifle. William George, the owner of the store, was working there that evening. The robbers took currency from the cash register, money orders, and a check protector. Some of the stolen money orders were later negotiated.

Items stolen in the Modern Variety Store robbery were left by defendant and one David Hunt at the home of an acquaintance. Defendant stated at that time that they got the items in a holdup in Sacramento.

Defendant objected at the trial to the admission of the evidence of the prior robbery, and the trial court, before admitting the evidence, held proceedings outside the jury's presence at which the court was informed what evidence would be introduced and heard arguments on the matter.

■ "It is settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge." (*People* v. *Henderson,* 60 Cal.2d 482, 494-495 [35 Cal.Rptr. 77, 386 P.2d 677] ; *People* v. *Woods,* 35 Cal.2d 504, 509 [218 P.2d 981] ; see also *People* v. *Coefield,* 37 Cal.2d 865, 869 [236 P.2d 570].) ■ Here the evidence of the prior robbery was relevant on the issue of the identity of defendant as a perpetrator of the robberies charged. The evidence of the prior

robbery disclosed a plan, pattern, and *modus operandi* similar in many respects to those used in the robberies charged. In the prior offense, as in each of the offenses charged, the place robbed was a business establishment in Sacramento, the robbery was committed during the evening or early morning hours, two or three men participated in the robbery, one or more of the robbers wore a mask, a gun was used in committing the robbery, and no victim was physically injured. It further appears that in the prior robbery and all the robberies charged, except those at Ralph's Bar, property in addition to money was taken, that the Bankamericard taken in the Viking Club robbery was later used by defendant, and that the money orders taken at the prior robbery were likewise later used apparently by one of the robbers.

In view of the striking similarities between the prior offense and the ones charged we are satisfied that the trial court did not abuse its discretion in admitting the evidence. (*People* v. *Adamson*, 225 Cal.App.2d 74, 78 et seq [36 Cal.Rptr. 894]; *People* v. *Renchie*, 217 Cal.App.2d 560, 563 [31 Cal.Rptr. 694]; *People* v. *McCarty*, 164 Cal.App.2d 322, 325-327 [330 P.2d 484].) ▇▇ There were factual differences between the prior robbery and the ones charged, such as that at the robberies at the Viking Club and Ralph's Bar, unlike the prior robbery, the victims were made to lie on the floor, but it was, of course, unnecessary to prove the prior offense identical in every detail with the crimes charged in order to render evidence of the prior offense admissible. (*People* v. *Rosoto*, 58 Cal.2d 304, 330 [23 Cal.Rptr. 779, 373 P.2d 867]; *People* v. *Renchie, supra*, 217 Cal.App.2d 560, 563.)

We are satisfied that the evidence is sufficient to support the jury's verdict on each count.

As we have seen, on direct examination defendant gave an alibi with respect to the robberies charged in counts 1 and 2. He did not refer on direct examination to the robberies charged in counts 3 and 4 or the collateral robbery. On cross-examination the prosecution asked a question directed to show that defendant was with David Perez a few moments after the robberies charged in counts 3 and 4, and an objection on the ground that the question was beyond the scope of direct examination was sustained. No questions were asked on cross-examination regarding the collateral robbery. In the closing argument the prosecution made comments on defendant's failure to explain or deny the evidence of his guilt as to counts 3 and 4. The trial court gave an instruction permitting the jury to draw an inference adverse to defendant from his failure to

explain or deny facts within his knowledge.[1] ■ [See fn. 2] After the verdict was returned the United States Supreme Court rendered its decision in *Griffin* v. *California, supra,* 380 U.S. 609, and defendant argues that under that decision the argument and instruction were improper.[2]

In *People* v. *Ing, ante,* pp. 603, 609-610 [55 Cal.Rptr. 902, 422 P.2d 590], we stated that *Griffin* v. *California, supra,* 380 U.S. 609, "held that the California constitutional provision permitting comment on the failure of the defendant to testify (Cal. Const., art. I, § 13) violated the Fifth Amendment privilege against self-incrimination made applicable to the states in *Malloy* v. *Hogan,* 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489]. *Griffin* further declared that 'the same standards must determine whether an accused's silence in either a federal or state proceeding is justified.' See also *Malloy* v. *Hogan, supra,* at p. 11.) In *Griffin* the defendant had not taken the stand, whereas here defendant testified in his own behalf, and it is necessary to consider to what extent he thereby waived his privilege against self-incrimination.

■ "Under federal decisions a defendant who takes the stand and testifies in his own behalf waives his Fifth Amendment privilege against self-incrimination at least to the extent of the scope of relevant cross-examination. (*Johnson* v. *United States,* 318 U S. 189, 195 [87 L.Ed. 704, 63 S.Ct. 549] ; *Caminetti* v. *United States,* 242 U.S. 470, 494 [61 L.Ed. 442, 37 S. Ct. 192] ; *Powers* v. *United States,* 223 U.S. 303, 314-316 [56 L. Ed. 448, 32 S.Ct. 281] ; *Sawyer* v. *United States,* 202 U.S. 150,

[1]The instruction read: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain any certain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

[2]The *Griffin* rule is applicable to cases pending on direct appeal at the time it was announced. (See *Tehan* v. *Shott,* 382 U.S. 406, 409, fn. 3 [15 L.Ed.2d 453, 86 S.Ct. 459] ; *Johnson* v. *New Jersey,* 384 U.S. 719, 732 [16 L.Ed.2d 882, 86 S.Ct. 1772].)

165-166 [50 L.Ed. 972, 26 S.Ct. 575]; *Fitzpatrick* v. *United States*, 178 U.S. 304, 314-316 [44 L.Ed. 1078, 20 S.Ct. 944]; *Ziegler* v. *United States*, 174 F.2d 439, 446-447; *Branch* v. *United States*, 171 F.2d 337, 338; *Carter* v. *United States*, 19 F.2d 431, 434; see *Brown* v. *United States*, 356 U.S. 148, 154 [2 L.Ed.2d 589, 78 S.Ct. 622, 72 A.L.R.2d 818]; *DeRose* v. *United States*, 315 F.2d 482, 487.) It matters not that the defendant's answer on cross-examination might tend to establish his guilt of a collateral offense for which he could still be prosecuted. (*Johnson* v. *United States, supra,* 318 U.S. 189, 192 et seq.; *Carpenter* v. *United States*, 264 F.2d 565, 569; see McCormick on Evidence (1954), p. 275.) "

■ As we have seen, on direct examination defendant testified to an alibi with respect to counts 1 and 2 and thus in effect denied the offenses charged in those counts. Cross-examination as to the collateral offense, which disclosed a plan, pattern, and *modus operandi* similar in many respects to those charged, would have been proper. (*People* v. *Ing, supra, ante,* p. 612, and authorities cited therein.) Cross-examination as to the robberies charged in counts 3 and 4 likewise would have been proper. Those robberies, like the collateral robbery, disclosed a plan, pattern, and *modus operandi* similar in many respects to those charged in counts 1 and 2.

The fact that defendant was then on trial for the robberies charged in counts 3 and 4 does not preclude a determination that the waiver extends to those offenses. To hold otherwise would permit a defendant to withdraw from the crossfire of interrogation before the reliability of his testimony has been fully tested. It is also of importance that the reasons advanced for the privilege are decisively less persuasive when applied to disclosures requested after the accused has voluntarily taken the stand. (See 8 Wigmore on Evidence (McNaughton rev. 1961) § 2276, p. 462.)

In our opinion it was not a violation of the federal constitutional privilege against self-incrimination for the prosecutor to argue and the court to instruct that an inference unfavorable to defendant could be drawn from his failure to explain or deny facts within his knowledge relating to counts 3 and 4 or to the collateral offense. The trial court's instruction was general in terms and permitted the jury to draw an inference unfavorable to defendant from his failure to deny or explain any matters within his knowledge, but no claim is made that there was any additional matter beyond the scope of relevant cross-examination that defendant failed to explain or deny.

No contention is made that the argument or instruction violated the state constitutional privilege against self-incrimination (Cal. Const., art I, § 13▉), nor could such a contention properly be made in the present case A defendant by testifying in his own behalf waives his state constitutional privilege against self-incrimination to the extent of the permissible scope of cross-examination (*People* v. *Ing, supra, ante,* p. 611, and authorities cited therein). Cross-examination with respect to the collateral offense would have been proper under California decisions (*People* v. *Ing, supra, ante,* pp. 611-612, and authorities cited therein). Cross-examination as to the robberies charged in counts 3 and 4, which, as we have seen, disclosed a plan, pattern, and *modus operandi* similar in many respects to those charged in counts 1 and 2, likewise would have been proper.

The judgment is affirmed.

Traynor, C. J., McComb, J., Tobriner, J., and Mosk, J., concurred

PETERS, J.—I concur in part and dissent in part.

The practical effect of the majority opinion is that the prosecution by joining charges of separate and distinct robberies can effectively compel the defendant to testify as to all charges or be subject to adverse inferences where he elects to testify as to one and there is evidence, however weak, from which it can be concluded that the robberies disclose a common plan, pattern, or *modus operandi.* If this is the law what becomes of the constitutional right to remain silent?

Obviously, if the offenses were separately charged and tried, defendant would have the right to decide in each trial whether to testify or to rely upon his privilege against self-incrimination. I cannot agree that the rules relating to joinder of charges or proof of similar offenses were ever intended or should be applied to deprive a defendant of that constitutional right. Furthermore the majority ignores the fact that the trial court by sustaining an objection to cross-examination effectively ruled that there was no waiver of the privilege, but the majority treats the matter as if the trial court had made a contrary ruling.

Defendant was charged in the first count with a robbery at the Viking Club, in count 2 with a robbery at the Corner Market, and in counts 3 and 4 with robbing the bartender and

a patron of Ralph's Bar. He took the stand and denied commission of the Viking Club and Corner Market robberies. He did not testify on direct examination with regard to the robberies charged in counts 3 and 4. When the prosecutor asked on cross-examination a question regarding the robberies charged in counts 3 and 4, the trial court sustained an objection on the ground that the question was beyond the scope of the direct examination.

In his closing argument, the prosecutor commented on defendant's failure to explain or deny the evidence of his guilt as to counts 3 and 4. The trial court gave an instruction permitting the jury to draw an inference adverse to defendant from his failure to explain or deny facts within his knowledge.

*Griffin* v. *California,* 380 U S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], which was decided after the verdict was returned in the instant case, held that such comment and instruction violates the Fifth Amendment privilege against self-incrimination. In concluding that the comment and instruction did not violate the rule of the *Griffin* case the majority reasons that by voluntarily taking the stand and testifying as to the offenses charged in counts 1 and 2 defendant waived his privilege not only as to those offenses but also as to the offenses charged in counts 3 and 4 because all of the robberies disclose a plan, pattern, or *modus operandi* similar in some respects. The majority finds itself in the anomalous position of affirming the judgment on all counts on the ground that the trial court erroneously limited the cross-examination of the defendant when it sustained the objection to questions relating to the offenses charged in counts 3 and 4.

I am of the opinion that the attempted cross-examination was clearly improper even if the common plan exception were applicable. If this is so, the waiver of defendant's privilege against self-incrimination did not extend to the offenses charged in counts 3 and 4. It is well settled that the breadth of the waiver by an accused who takes the stand in the trial "is determined by the scope of relevant cross-examination." (See *Brown* v. *United States,* 356 U.S. 148, 154-155 [2 L.Ed. 2d 589, 78 S.Ct 622, 72 A.L.R.2d 818]; *Johnson* v. *United States,* 318 U.S. 189, 195 [87 L.Ed. 704, 63 S.Ct. 549].) This rule permits a defendant, before taking the stand, to determine the scope of his waiver and to intelligently weigh the alternatives of testifying or asserting his privilege, and, where the prosecution seeks improper cross-examination, it should not be held to come within the waiver. In the instant case, the

defendant was thus effectively told by the trial court that the waiver did not extend to counts 3 and 4.

Moreover, in a number of situations this court has recognized that certain evidence, although relevant and admissible for a limited purpose, should be excluded where the prejudice to a defendant from the admission of the evidence will outweigh its probative value and where it cannot be reasonably expected that the jury will confine its consideration of the evidence to the limited purpose for which admission would otherwise be proper. (See, e.g , *People* v. *Aranda,* 63 Cal.2d 518, 530-531 [47 Cal.Rptr. 353, 407 P.2d 265] ; *People* v. *Henderson,* 60 Cal.2d 482, 494-495 [35 Cal.Rptr. 77, 386 P.2d 677] ; *People* v. *Atchley,* 53 Cal.2d 160, 168 [346 P.2d 764] ; *People* v. *Foote,* 48 Cal.2d 20, 23-24 [306 P.2d 803].)

In *Shepard* v. *United States,* 290 U.S. 96, 104 [78 L.Ed. 196, 54 S.Ct. 22], where the defense introduced evidence that the decedent was contemplating suicide and the prosecution offered testimony that three weeks prior to her death the decedent had said that ''Dr. Shepard has poisoned me,'' the court in holding that the quoted statement should not have been admitted to show state of mind of the decedent stated : ''It will not do to say that the jury might accept the declarations for any light that they cast upon the existence of a vital urge, and reject them to the extent that they charged the death to someone else. Discrimination so subtle is a feat beyond the compass of ordinary minds. The reverberating clang of those accusatory words would drown all weaker sounds. It is for ordinary minds, and not for psychoanalysts, that our rules of evidence are framed. . . . When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out.'' (See also *People* v. *Talle,* 111 Cal.App.2d 650, 670 [245 P.2d 63].)

These principles have been recognized by this court with regard to evidence of collateral offenses, and we have pointed out that evidence of such offenses carries with it the risk that its probative value may be outweighed by its possible prejudicial effect. (*People* v. *Henderson, supra,* 60 Cal.2d 482, 495.)

Although ordinarily the question whether possible prejudice warrants exclusion is addressed to the trial court (*People* v. *Henderson, supra*), permitting the cross-examination in the instant case would have been an abuse of discretion as a matter of law. Of necessity cross-examination of defendant as to the robberies charged in counts 3 and 4 bears directly on the issue of guilt of the robberies charged in

counts 3 and 4, and it is obvious that a jury, whether or not given a limiting instruction, will consider such evidence as bearing on the issue of guilt as to those robberies and not merely as bearing on the offenses charged in counts 1 and 2 to which such cross-examination relates merely collaterally. In other words, the advantage, if any, that the prosecution may gain with respect to counts 1 and 2 in eliciting admissions by cross-examination of defendant as to the robberies charged in counts 3 and 4 is clearly outweighed by the risk of prejudice to defendant due to the possibility that the jury will consider such admissions in determining guilt of the charges in counts 3 and 4.

Moreover, even without regard to prejudice to defendant, the trial court's determination that the questioning of defendant as to the robberies charged in counts 3 and 4 was not proper cross-examination must be upheld because of the weakness of the showing that those robberies disclosed a plan, pattern, or *modus operandi* similar to the robberies charged in counts 1 and 2.

The majority summarizes such showing with regard to the four offenses charged and a prior offense as follows: ''In the prior offense, as in each of the offenses charged, the place robbed was a business establishment in Sacramento, the robbery was committed during the evening or early morning hours, two or three men participated in the robbery, one or more of the robbers wore a mask, a gun was used in committing the robbery, and no victim was physically injured. It further appears that in the prior robbery and all the robberies charged, except those at Ralph's Bar, property in addition to money was taken, that the Bankamericard taken in the Viking Club robbery was later used by defendant, and that the money orders taken at the prior robbery were likewise later used apparently by one of the robbers.''

Counts 3 and 4, as pointed out above, relate to the robberies of Ralph's Bar, and those robberies occurred early in the morning, involved three robbers, and resulted in the theft of money only; whereas the other robberies occurred in the evening, involved two robbers, and resulted in the taking of property in addition to money.

I am satisfied that the ordinary principles of appellate review require us to uphold the trial court's determination that the questioning of defendant as to the offenses charged in counts 3 and 4 was not proper cross-examination. Since the questioning did not come within the scope of proper cross-

examination, such questioning did not come within the waiver of the privilege, and it was improper for the prosecutor to comment on the fact that defendant did not deny commission of the offenses charged in counts 3 and 4, and it was error for the court to instruct the jury that it could draw an inference unfavorable to the defendant from his failure to explain or deny facts within his knowledge.

*People* v. *Ing, ante,* page 603 [55 Cal.Rptr. 902, 422 P.2d 590], is distinguishable. In that case evidence of collateral crimes of which defendant was not charged was used to show a common scheme or plan. Since defendant was not charged with the collateral crimes, there was, of course, no danger that the jury would misuse the evidence to convict defendant of such crimes For this reason I have signed the *Ing* opinion.

The misconduct and the erroneous instruction in the instant case require reversal if there is a reasonable possibility that the errors complained of contributed to the conviction. (Cal. Const., art. VI, § 13█; *Fahy* v. *Connecticut,* 375 U.S. 85, 86-91 [11 L.Ed.2d 171, 84 S.Ct. 229]; see *People* v. *Bostick,* 62 Cal.2d 820, 823-827 [44 Cal.Rptr. 649, 402 P.2d 529].) The evidence to connect defendant with the robberies charged in counts 3 and 4 as set forth in the majority opinion is weak. Defendant did not testify with respect to those offenses, and I am of the view that there is a substantial likelihood that the misconduct and the erroneous instruction contributed to defendant's conviction of these offenses. A different situation appears, however, as to the offenses charged in counts 1 and 2. There was strong evidence to connect defendant with each of those robberies. Defendant denied commission of those robberies, and neither the misconduct nor the erroneous instruction was directed towards these offenses. Under the circumstances, there is no reasonable possibility that the matters complained of contributed to defendant's conviction of the offenses charged in counts 1 and 2.

I would reverse the judgments of conviction of the offenses charged in counts 3 and 4 and affirm the judgments of conviction of the offenses charged in counts 1 and 2.

Peek, J.,† concurred.

---

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.