[Crim. No. 12084. Second Dist., Div. One. Mar. 7, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES HARVEY KERRY, Defendant and Appellant.

---

James Harvey Kerry, in pro. per., Cooper & Nelson and Maxwell S. Keith for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with two counts of indecent exposure (Pen. Code, § 314, subd. 1) and two prior felony convictions (burglary and indecent exposure). The jurors were unable to agree and a mistrial was declared. Before the second trial, and outside of the presence of the jury, defendant admitted the priors. He was convicted on both counts. Committed to Atascadero State Hospital for observation and diagnosis, he was found not to be a mentally disordered sex offender and returned to the superior court. Probation was denied and defendant was sentenced to the state prison. He appeals from the judgment.

The Fissers incident (count I). On October 13, 1964, around 8:15 a.m., Christianne Fissers and Sally Drake, walking through an alley on their way to school, saw defendant deposit refuse in a trash can, step from behind a group of cans and stand naked and motionless. Defendant then turned

and disappeared into a passageway between two apartment buildings. The same incident was observed by Timothy Austin from a vehicle in which he was riding to school. Upon Christianne's report, Officer Fredericksen went to the location and saw defendant peer over a four-foot, second-floor solid balcony.

The Macias incident (count II). On September 21, 1964, around 11 p.m. Ruth Macias, doing her laundry in a laundromat, heard a voice behind her say "Hello"; she turned and saw defendant standing a few feet away from her completely nude except for a small cloth in front of him covering his private parts; he said, "Do you mind if I wash my clothes"; he then removed the cloth and dropped it to the floor exposing himself completely; he touched his private parts, knelt to his knees in front of her and performed an act.

In addition, a number of witnesses testified to four other acts involving defendant—two subsequent and two prior to those charged in the information.

SMITH INCIDENT—on April 13, 1965, around 11:15 a.m. Jean Smith and Rita Ahern drove into an alley behind their home; Mrs. Smith saw defendant crouching down near some trash barrels; Miss Ahern alighted from the vehicle to ask him to move his car which was blocking the entry to their garage; as he stood erect she saw that he was nude; defendant then took a piece of red material out of his car and held it alternately in front of his face and his license plate; the women took his license number and reported the incident to the police. REILLY INCIDENT—Maureen Reilly, age 7, a neighbor of defendant, often watched him exercise in the garage; once his pants slipped down and she saw his private parts; she told her mother about this on March 13, 1965, and Mrs. Reilly reported the same to the police. SPARKS INCIDENT—on February 7, 1963, at 1 a.m., Barbara Sparks was in a laundromat; she observed defendant enter the door naked holding his exposed private parts; upon reporting the matter to the police she was picked up by a police car and taken to a point on the San Bernardino Freeway where defendant was stopped; she identified him as the nude man she had seen 15 minutes earlier in the laundromat. HULL INCIDENT—on December 28, 1962, around 10 p.m., Marie Hull was in a laundromat and observed defendant enter the front door naked, masturbating; she later saw him leave through the rear door.

As to count I, the defense was that his exposure was accidental. Defendant testified that he had gone down the back

stairs to empty the trash dressed only in a towel when the lip of a box he was holding caught on the towel and tore it away; he immediately reached down and hoisted up the towel. As to count II, he offered an alibi and claimed he was not the person seen by Mrs. Macias; in support thereof defendant, his wife and Alice Daley, a waitress, testified that on September 21, around 10:30 p.m., he and his wife arrived at Wessel's Cafe and did not leave until close to midnight. Concerning the SMITH INCIDENT, defendant denied that he was the person the two women saw in the alley on April 13, 1965, at 11:15 a.m., and testified that he was at various other places during the day; his wife testified that she saw him at that time at the school where she was employed and he remained there for 10 or 15 minutes; his mother testified that on April 13 she, defendant and his wife were living at her home in San Gabriel and defendant returned home at 20 minutes to 12. In connection with the REILLY INCIDENT, defendant denied that his sweat pants fell off at any time, although he admitted he had called Mrs. Reilly to express his consternation concerning his arrest on Maureen's allegations, but denied he had threatened her. Defendant outright denied the SPARKS and HULL INCIDENTS; he testified that he was not the man either Mrs. Sparks or Mrs. Hull had seen in the laundromats, but had no recollection where he was on the date of either incident, other than that he was not in any laundromat naked; and that early in the morning of February 17, 1963, when stopped by the police on the freeway he was on his way home from his job.

Appellant's main contention is that admission of the evidence of the additional four incidents constituted reversible error. He claims that the testimony of Maureen Reilly in no way aided the jury in establishing identity or intent; the testimony of Mrs. Smith and Miss Ahern failed to show an incident similar to that observed by Mrs. Macias, other than the exposure itself; the testimony of Mrs. Sparks and Mrs. Hull related to acts which were too remote; and the prejudice is apparent because in the first trial in which the evidence was not offered the jury deadlocked, while in the second, the jury had little difficulty in arriving at the guilty verdicts.

■ '' 'It is settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge.' (*People* v. *Woods,* 35 Cal.2d 504, 509 [218 P.2d 981]; *People*

v. *Weitz*, 42 Cal.2d 338, 347 [267 P.2d 295].)'' (*People* v. *Henderson*, 60 Cal.2d 482, 494-495 [35 Cal.Rptr. 77, 386 P.2d 677] ; *People* v. *McCaughan*, 49 Cal.2d 409, 421-422 [317 P.2d 974].) ▆ Here the evidence was offered, as stated by the deputy district attorney, ''to establish the intent and negative the idea of accident or misfortune''; indeed, the defense to the Fisser incident alleged in count I was accident and inadvertence. Defendant claimed that his exposure to the two girls occurred when the towel he was wearing was accidentally torn away by the lip of the box he was throwing in the trash. Proof that he exposed himself nude to others—Mrs. Smith, Miss Ahern, Maureen Reilly, Mrs. Sparks and Mrs. Hull—tends to refute the defense that the towel came off of his body by accident. Identity was definitely an issue in count II; defendant denied that he was the naked man seen by Mrs. Macias in the laundromat. Evidence that previously defendant was seen naked in other laundromats by Mrs. Sparks and Mrs. Hull at different times was relevant on the issue of identity of the one who exposed himself to Mrs. Macias. (*People* v. *Perez*, 65 Cal.2d 615, 618 [55 Cal.Rptr. 909, 422 P.2d 597] ; *People* v. *Baskett*, 237 Cal.App.2d 712, 717 [47 Cal. Rptr. 727] ; *People* v. *Lindsay*, 227 Cal.App.2d 482, 504 [38 Cal.Rptr. 755] ; see also *People* v. *Crisafi*, 187 Cal.App.2d 700, 707 [10 Cal.Rptr. 155] ; *People* v. *Cassandras*, 83 Cal.App.2d 272, 279 [188 P.2d 546].) ▆ From the testimony of Mrs. Macias, Mrs. Sparks and Mrs. Hull, it appears that in each instance the woman saw defendant in the late evening or early morning hours walk into a laundromat naked, expose himself, perform a lewd act, then leave. The evidence of the prior acts discloses a common scheme or plan to commit indecent exposure. (*People* v. *Ing*, 65 Cal.2d 603, 612 [55 Cal. Rptr. 902, 422 P.2d 590] ; *People* v. *Perez*, 65 Cal.2d 615, 619 [55 Cal.Rptr. 909, 422 P.2d 597] ; *People* v. *Cassandras*, 83 Cal.App.2d 272, 279-282 [188 P.2d 546].) There is here a peculiar behavior pattern which tends to identify the perpetrator of the two earlier acts as the same person who committed the act charged in count II. (See *People* v. *Crisafi*, 187 Cal.App.2d 700, 707 [10 Cal.Rptr. 155].) *People* v. *Baskett*, 237 Cal.App.2d 712 [47 Cal.Rptr. 727], relied upon by appellant, is not factually similar; there the court could not say that the manner in which the former acts were committed ''has such unique qualities as to distinguish the perpetrator from other child molesters,'' and ''[i]dentity was not a genuine issue in the case.'' (P. 717.)

■ The factual difference between the Sparks and Hull incidents and the Macias offense, is minor—in each incident defendant walked into a laundromat naked, exposed himself, committed an act and left. Even though defendant did not in the presence of Mrs. Sparks or Mrs. Hull commit the identical act he performed before Mrs. Macias, laundromats are not places in which men, naked, are ordinarily found. It was, of course, ''unnecessary to prove the prior offense identical in every detail with the crimes charged in order to render evidence of the prior offense admissible. (*People* v. *Rosoto,* 58 Cal.2d 304, 330 [23 Cal.Rptr. 779, 373 P.2d 867]; *People* v. *Renchie, supra,* 217 Cal.App.2d 560, 563 [31 Cal.Rptr. 694].)'' (*People* v. *Perez,* 65 Cal.2d 615, 619 [55 Cal.Rptr. 909, 422 P.2d 597].)

■ Inasmuch as the evidence was relevant on the question of intent and identity, it was admissible whether the other acts were prior or subsequent. (*People* v. *Coefield,* 37 Cal.2d 865, 870 [236 P.2d 570]; *People* v. *Houston,* 219 Cal.App.2d 187, 192 [33 Cal.Rptr. 26].) The fact that the Sparks and Hull incidents occurred in 1963 and 1962, respectively, affected the weight of the evidence rather than its admissibility. (*People* v. *Ing,* 65 Cal.2d 603, 612 [55 Cal.Rptr. 902, 422 P.2d 590]; *People* v. *Stewart,* 241 Cal.App.2d 509, 518 [50 Cal.Rptr. 630]; *People* v. *Hernandez,* 209 Cal.App.2d 33, 40 [25 Cal.Rptr. 640]; *People* v. *Kearns,* 149 Cal.App.2d 113, 121 [307 P.2d 1015]; *People* v. *Burns,* 109 Cal.App.2d 524, 538 [241 P.2d 308, 242 P.2d 9].)

■ ''If such evidence is determined to be relevant to prove a material fact in issue, it is for the trial court in the exercise of its judicial discretion to determine whether its probative value is outweighed by its possible prejudicial effect and to admit or exclude it accordingly, . . .'' (*People* v. *McCaughan,* 49 Cal.2d 409, 421-422 [317 P.2d 974].) In view of the striking similarities between the prior and subsequent offenses and those charged, we are satisfied that the trial court did not abuse its discretion by admitting the evidence. (*People* v. *Perez,* 65 Cal.2d 615, 619 [55 Cal.Rptr. 909, 422 P.2d 597].)

■ Finally, appellant argues that the judgment should be reversed for the purpose of determining the validity of the prior conviction of indecent exposure as alleged in the information.

The record shows that on May 17, 1965, prior to the impanelment of the second jury and out of its presence, defend-

ant admitted that in 1960 he had been convicted of burglary, and in May 1963, of indecent exposure (Pen. Code, § 314, subd. 1) in the Municipal Court of the El Monte Judicial District. Under the rules then in effect, the admission by defendant of the prior conviction of indecent exposure was for all purposes, thereby relieving the prosecution of its burden of producing any evidence regarding it. (*People* v. *Niles*, 227 Cal.App.2d 749, 758-759 [39 Cal.Rptr. 11] ; *People* v. *McConnell*, 86 Cal.App.2d 578, 580 [195 P.2d 34].) Accordingly, and properly so, the People offered nothing further concerning the conviction. ■■■ Appellant's counsel now asserts that he "is informed and believes that appellant was not represented by an attorney at the trial resulting in his conviction in the Municipal Court of the El Monte Judicial District" (A.O.B. p. 15), and asks this court to return the cause for the purpose of determining whether defendant was represented by counsel at that trial and if not, whether he intelligently and with understanding waived his right to counsel, citing *In re Woods*, 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913].

The trial and defendant's admission of the prior conviction occurred on May 17, 1965; *In re Woods* was decided by the California Supreme Court on January 26, 1966. In addition, there is nothing in the record before this court which reflects that defendant was unrepresented at the proceedings leading to the prior conviction; this is so because the defendant admitted the prior and did not elect to contest its validity, and at that time there was no reason for the People to offer any evidence concerning it. Under the circumstances we will not disturb the judgment, and the same is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied April 4, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 4, 1967.