THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CÁNDIDA HERNÁNDEZ SOTO, JUANITA HERNÁNDEZ SOTO, Defendants and Appellants.

No. CR-68-127.     Decided March 18, 1971.

*Santos P. Amadeo, Miguel Ángel Salicrup Cabelo, F. Gallardo Díaz* for appellants. *Rafael A. Rivera Cruz, Solicitor General,* and *J. F. Rodríguez Rivera, Deputy Solicitor General, Peter Ortiz, Acting Deputy Solicitor General,* and *Juan José Ríos, Assistant Solicitor General,* for The People.

PER CURIAM: This is a grand larceny case.[1] The evidence shows that the two defendants and a third person, acting in concert and by mutual agreement, unlawfully took away, by means of stratagem, a portable television set, a portable radio, and an electric iron, from a furniture and household goods store situated in Río Piedras, Puerto Rico. The stratagem consisted in that while one of them had the manager of the business explain to her the operation of a washing machine, the other two stole and took away from the store said goods.

---

[1] Fifty-one thousand seven hundred seven larcenies, robberies, and burglaries are committed in Puerto Rico in a year. One hundred forty-one per day and 6 per hour. *Informe Anual de la Policía de Puerto Rico* 36 (1969–1970).

Appellants were accused of the offense of grand larceny, 33 L.P.R.A. § 1683, and a jury found them guilty of the offense charged.

On appeal, before this Court, there appears in the record a brief signed by one attorney, and there is another complementary brief signed by another attorney. Both briefs put together assign nine errors in all, but since four of them are repeated, the assignments of error are reduced to the five errors which we shall discuss below. We shall discuss them in an order different from that in the briefs.

■ In the first assignment of error the sufficiency of the evidence is challenged. It lacks merit. We have examined the transcript of evidence. The evidence, as believed by the jury, is sufficient to support the convictions.

The second assignment is to the effect that the court permitted the prosecuting attorney to comment, in his argument to the jury, the silence of defendant Juanita Hernández, in violation of Art. II, § 11, of the Constitution of Puerto Rico and of the Fifth Amendment of the Constitution of the United States. Let us see what occurred. Said defendant testified at the trial. To questions made by her attorney she testified about her name, address, civil status, that she did not work because her husband supported her, that she has furniture in her house, that she has a television set, and that her husband provides for all her necessities. On cross-examination the prosecuting attorney, after passing on the aforementioned matters, commenced to examine her as to the day of the events, but the counsel for the defense objected and the following dialogue ensued:

"MR. SALICRUP: It has not been object of the direct evidence.

JUDGE: The defense is right.

PROSECUTING ATTORNEY: We understand that it is right, we are not going to enter into the events, but rather to see . . .

JUDGE: But she has not referred in any manner whatsoever to August 23, she has not mentioned that date, she cannot be

cross-examined on what occurred that day because she has not mentioned anything in relation to that on direct examination."

Note that the objection to the prosecuting attorney's cross-examination sustained by the judge was due to the fact that the matter sought to be investigated had not been part of the direct examination and not because said examination violated the right to remain silent. It dealt with a well-known rule of evidence and not a problem of self-incrimination.

Inasmuch as the prosecuting attorney's objected comment was made in his argument to the jury, and inasmuch as the argument does not appear copied in the record, by our order of October 9, 1968, we requested the parties to reproduce the alleged comment on defendant's silence. The parties sent a stipulation, which they had previously submitted to the Superior Court and which was approved by said court, stipulating that the prosecuting attorney's comment was the following:

"You, ladies and gentlemen of the jury, had the opportunity to hear codefendant Juanita Hernández Soto, during her testimony. Her testimony was only and exclusively limited to inform about her economic condition on the date of the events. She had the opportunity to rebut the evidence for the prosecution and explain what constituted her intervention and her presence at the scene of the crime; she did not do so because it was not convenient for her, and you should take that into consideration in deciding this case."

What occurred at the trial when the prosecuting attorney made said comment was the following, as it appears from the transcript of evidence:

"MR. SALICRUP: (Presents his argument to the jury.)

JUDGE: The prosecuting attorney may present his closing argument.

PROSECUTING ATTORNEY: (Presents his closing argument to the jury.)

MR. SALICRUP: (During the prosecuting attorney's argument.) We are going to raise objection, he is commenting on defendant's silence.

PROSECUTING ATTORNEY: What silence? She took her seat.

MR. SALICRUP: Yes, Your Honor, he is interpreting the silence before the jury.

JUDGE: The prosecuting attorney has the right to argue on what she did not say from the witness stand,. and after she took her seat and waived her right to remain silent.

MR. GALLARDO: We take exception."

■ As it is well known, the defendant is not obliged to testify against himself and he cannot be obliged to do so, but he has the privilege to become a witness in his own behalf, and if he does so, he subjects himself to all the rules regulating the examination and cross-examination of  witnesses. *People* v. *González*, 35 P.R.R. 617, 618 (1926) ; *People* v. *Archeval*, 74 P.R.R. 478, 482 (1953) ; *People* v. *Rodríguez*, 85 P.R.R. 448, 455 (1962).

In this case we must examine the situation more closely, because here we do not find the classic situations of (1) a defendant who does not absolutely occupy the witness stand and whose silence cannot be commented upon, nor (2) that of a defendant who occupies the witness stand to testify on all the criminal transactions involved in the trial. In this case defendant chose to testify on some points and not to testify on other points. The position assumed by the defendant is that she sat and did not sit in the witness stand. From a reading of the transcript of evidence it appears that she wanted to testify on her economic situation *to show that she was solvent and that she did not need to participate in the theft charged against her*. So, her testimony had a direct connection with the issue of her guilt.

*People* v. *Pérez*, 422 P.2d 597 (1967), decided by the Supreme Court of California, is a case similar, but not exact to the one at bar. The information of theft against Pérez con-

tained four counts. Pérez chose to testify with respect to counts one and two, but he did not testify with respect to counts three and four. The prosecutor commented that an inference unfavorable to defendant could be drawn for his failure to explain or deny facts within his knowledge relating to counts three and four. The presiding judge sustained the prosecutor and, furthermore, gave an instruction to the jury permitting it to draw an inference adverse to the defendant because the latter failed to explain or deny facts within his knowledge.

In its opinion, the Supreme Court of California acknowledges that in view of the cases of *Malloy* v. *Hogan*, 378 U.S. 1, and *Griffin* v. *State*, 380 U.S. 609, the privilege against self-incrimination in the Fifth Amendment is applicable to the states, and therefore, to California.

It also pointed out that in *Griffin*, the defendant had not taken the stand at the trial where his innocence or guilt was being elucidated,[2] whereas Pérez did testify, and it was necessary to determine to what extent he had waived his privilege against self-incrimination. The court reasoned that there existed a connection between the four counts, and that the cross-examination in connection with counts three and four would have been proper.

The court concluded that the prosecutor's comment and the judge's instruction did not violate defendant's constitutional right against self-incrimination. It stated that defendant, in testifying on his own behalf, waived said constitutional right to the extent of the permissible scope of said cross-examination. As it considered that the cross-examination as to counts three and four would have been proper (there existing a connection between the same based on the fact that the events disclosed a plan or *modus operandi* similar

---

[2] But he did testify in another trial in which the point relative to the penalty which should be imposed on him, as a result of his conviction, was heard.

to those charged in counts one and two), the court concluded that the prosecutor's comment and the judge's instruction did not invade any jurisdiction prohibited to them. The Supreme Court of California sustained the conviction. The Supreme Court of the United States issued certiorari in this case, but later it was dismissed as improvidently granted, 395 U.S. 208 (1969).

■ In the case at bar, like in the aforementioned *Pérez* case, *supra*, there is a direct connection between defendant's testimony and the issue of her innocence or guilt, since her testimony tended to impart to the mind of the jury the idea that, since she was solvent, she could not be guilty of the offense charged against her. Of course, the argument is a *non sequitur*, since solvent persons sometimes steal, but we know that deceitful arguments are sometimes presented to the jurors. When the witness voluntarily took the witness stand to testify on those points, she submitted herself to cross-examination on the issue of her guilt. In other words, in offering testimony in connection with the issue of her guilt or innocence, she waived the privilege against self-incrimination.

In support of a position on the contrary, the cases of *Griffin* v. *California*, 380 U.S. 609, and *Johnson* v. *United States*, 318 U.S. 189, have been mentioned. These cases do not decide the problem raised in the case at bar. In *Griffin* a murder case was involved; defendant was convicted and the death penalty was imposed on him. In that case defendant *did not take the witness stand* to testify, and the prosecutor and the court commented adversely to defendant the fact that the latter remained silent. There, of course, the violation of the constitutional right was evident, and the reversal was mandatory, as in effect it was done.

In the *Johnson* case, *supra*, the facts are so different that said case is clearly distinguishable from the one at bar. There, the witness, in the course of his testimony, wanted to claim

expressly the privilege of the Fifth Amendment, alleging that answering certain questions related to his income for the year 1938 would tend to incriminate him and would give cause for new charges. The trial court granted the witness' objection to cross-examination, but later on it permitted the prosecuting attorney to comment on said fact in his address to the jury. The Supreme Court adopted the position that the objection was erroneously granted by the trial court, but once granted the prosecuting attorney was precluded from commenting on it. Note that therein the objection to cross-examination was not based on the fact that the matter had not been subject to direct examination, but rather that the issue directly and plainly was that of self-incrimination. Notwithstanding the foregoing, the Supreme Court stated the following at p. 195:

"The case of an accused who voluntarily takes the stand and the case of an accused who refrains from testifying . . . are of course vastly different. . . . His 'voluntary offer of testimony [that of the deponent] . . . is a waiver as to *all other relevant facts,* because of the necessary connection between all.' "

At p. 196, the Court stated:

". . . we may assume that it would not have been error for the court to deny petitioner's claim of privilege . . . his failure to explain the source of his numbers income in 1938 could properly be the subject of comment and inference . . . an accused who takes the stand 'may not stop short in his testimony by omitting and failing to explain incriminating circumstances and events already in evidence, in which he participated and concerning which he is fully informed, without subjecting his silence to the inferences to be naturally drawn from it.' "

In this *Johnson* case, the Court affirmed the conviction whose reversal was sought.

The third error is to the effect that the court erred in instructing the jury on defendants' escape or flight from the scene of the occurrence. Cándida, one of the codefendants,

testified that when the other codefendant, Juanita, put the television set into a bag, she, Cándida, "the only thing I could improvise . . ." was "to say 'my little girl went away' and I ran away." Tr. Ev. 114. She also testified, "I was not accompanied by any little girl." Two pages farther on, she testified again:

"She, Juanita, ran after me, and then I started the car and left; the two of us got into the car and left." Tr. Ev. 116.

The judge's instruction concerning these points was moderate in its exposition and was not prejudicial to defendants. Actually, what prejudiced the defendants were the facts in themselves. The judge explained that:

"Evidence has been offered here, which tends to show, to establish, that immediately after the occurrence of these events, the defendants went away running from the furniture store where the facts allegedly occurred. In relation to these circumstances, I must charge you as follows: the flight of a person immediately after the commission of any crime or offense whatsoever, or after having been accused of the commission of an offense, is not sufficient by itself to establish his guilt, but it is a fact, it is a circumstance which, once it is proved, may be considered by you in relation to the other circumstances when you decide whether defendant is innocent or guilty, you are the ones to determine, by your analysis and weighing of the evidence offered, and also, from these circumstances, from this circumstance in particular, whether these two defendants, or one of them, fled away, whether they actually fled from there, escaped, or whether, as one of them said, ran away due to the explanation given by her, explanation which you heard, and we are not making the analysis of the evidence now. Now, then, if you understand that one of them escaped from there, or the two of them, in any event, that is a circumstance to be considered by you for the purpose of determining their criminal liability in this case, because the flight or escape of a person tends to indicate a guilty conscience, a feeling of guilt, and you are the ones to determine, I repeat, whether or not there was escape; and whether both defendants fled, or one of them, what significance, or lack of significance, or insignificance, do you see in these cir-

cumstances of defendants leaving and on the manner in which they left the furniture store where the facts allegedly occurred."

That part of the instructions taken together with the other explanations given by the judge concerning reasonable doubt and the nature of the offense charged were not erroneous. *People* v. *Vega Santos*, 88 P.R.R. 264 (1963); *People* v. *Ortiz*, 85 P.R.R. 152 (1962). The third error assigned was not committed.

In the fourth assignment of error (in the order we are discussing them) it is alleged that the court erred in instructing the jury on reasonable doubt. For two reasons independent in themselves and each one sufficient in itself, this error was not committed. The first reason is that appellants did not comply with Rule 137 of the Rules of Criminal Procedure, which provides that:

". . . Neither party may assign as error any portion of the instructions or omission therein unless objection is raised thereto or additional instructions are requested before the jury retires to deliberate, stating clearly the grounds of challenge or of its request."

*People* v. *Del Valle*, 91 P.R.R. 167, 172 (1964); *People* v. *García*, 78 P.R.R. 379, 388 (1955); *People* v. *Cirino*, 69 P.R.R. 488 (1949); *People* v. *Díaz*, 63 P.R.R. 948 (1944).

The other reason is that the instructions given in this case are sufficient. Copying them here would be tedious. They are found at pages 156 and 159 of the transcript of evidence. They are instructions which have passed the experience and judicial test. *People* v. *Gagot Mangual*, 96 P.R.R. 611 (1968); *People* v. *Dávila*, 85 P.R.R. 432 (1962). The fourth error assigned was not committed.

The fifth assignment of error is in the sense that the verdict is void because it was not returned unanimously by the jury. This contention has been decided adversely to appellants. The Constitution of the Commonwealth of Puerto Rico,

in its Art. II, § 11, provides that in all prosecutions for a felony the accused shall have the right of trial by an impartial jury composed of twelve residents of the district, who may render their verdict by a majority vote which in no case may be less than nine. *Fournier* v. *González, Warden*, 80 P.R.R. 254 (1958); *Fournier* v. *González*, 269 F.2d 26 (1959); *Jaca* v. *Delgado, Warden*, 82 P.R.R. 389 (1961); *People* v. *Delgado Lafuente*, 97 P.R.R. 260 (1969).

The Puerto Rican constitutional law fully guarantees that in all criminal prosecutions, the accused shall enjoy the right to have a speedy and public trial, to be informed of the nature and cause of the accusation and to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, to have assistance of counsel, and to be presumed innocent.

No person shall be compelled in any criminal case to be a witness against himself and the failure of the accused to testify may be neither taken into consideration nor commented upon against him. No person shall be twice put in jeopardy of punishment for the same offense. Before conviction every accused shall be entitled to be admitted to bail. Incarceration prior to trial shall not exceed six months nor shall bail or fines be excessive. No person shall be imprisoned for debt. Constitution of Puerto Rico, Art. II.

■ But our jury—of statutory and now constitutional origin—is not the "common law jury" which operates by unanimity. Our historical and sociological circumstances, and our special constitutional relationship with the United States,[3] justify, in Puerto Rico, the verdict by a jury composed of twelve residents and rendered by a majority vote of not less than nine. See, *Fournier* v. *González, Warden*, 80 P.R.R. 254 (1958); *Fournier* v. *González*, 269 F.2d 26; Public Law 600,

---

[3] Acknowledged by the Federal Supreme Court. *Katzenbach* v. *Morgan*, 384 U.S. 641, 658 (1966).

64 Stat. 314; Public Law 447, 66 Stat. 327; Constitution of the Commonwealth of Puerto Rico, Art. II, § 11; *Puerto Rico's New Self-Governing Status*, 28 Department of State Bulletin 584 (1953); Resolution 151 of the United Nations General Assembly approved in its Plenary Session No. 459 of November 27, 1953; Gutiérrez Franqui and Wells, *The Commonwealth Constitution*, 285 The Annals of the American Academy of Political and Social Science 33 (1953); Magruder, Calvert, *The Commonwealth Status of Puerto Rico*, 15 U. Pitt. L. Rev. 1 (1953); Wells, The Modernization of Puerto Rico (1969); Clark and Rogers, *The New Judiciary Act of Puerto Rico*, 61 Yale L.J. 1147 (1952).

The errors assigned not having been committed, the judgments appealed from will be affirmed.

Mr. Acting Chief Justice Pérez Pimentel did not participate herein. Mr. Justice Hernández Matos dissented.