## STATE OF VERMONT v. WILLIAM CHASE.

### MAY TERM, 1896.

*Adulterous relations with wife may be shown as motive for murder of husband.   Evidence.*

1.   Upon the trial for one indicted for murder, it may be shown that the respondent had adulterous relations with the wife of the deceased as supplying a motive.

2.   And the entire connection between the respondent and the wife may be shown, if as a whole it tends to establish such relations, although single instances in that connection, if standing alone, might not be admissible.

3.   That the respondent, upon the morning after the homicide, started to run away, and upon being required to, returned, is admissible.   An innocent reason for this act, would go to the weight and not the competency of the testimony.

4.   So it is permissible to show that the respondent, knowing that he was suspected of complicity in the murder, and being recognized to appear as a witness against the wife and another charged with it, fled to Canada and there lived in disguise.

Indictment for the murder of John E. Holloway by poisoning. Plea, not guilty. Trial by jury at the February term, 1896, Orleans county, THOMPSON, J., presiding. Verdict, guilty of manslaughter. The respondent excepts.

*W.. W. Miles* for the respondent.

Adultery with the wife cannot be shown as a motive, upon the part of her paramour for the killing of her husband. Such evidence is only admissible when the husband or wife is accused of the murder. Wharton, Criminal Ev. 64; *People* v. *White*, 14 Wend. 111; Best Ev. p. 119; *State* v. *Smalley*, 50 Vt. 734.

*O. S. Annis*, State's Attorney, for the state.

The adulterous relations between the respondent and the wife of the deceased were admissible to show motive. Whar. Crim. Ev., 8th ed., s. 785; *State* v. *Watkins*, 9 Conn. 47; 9 Am. and Eng. Enc. of Law, 714, and the cases there cited; *McCue* v. *Com.*, 78 Penn. St. 185; *State* v. *Reed*, 53 Kan. 767; *McCann* v. *People*, 3 Parker C. R. 272; *Stout* v. *People*, 4 Parker C. R. 71; *Piersons* v. *People*, 79 N. Y. 424.

That the respondent attempted to escape on the morning after the homicide and subsequently fled to Canada and there lived in disguise might be shown. Whar. Crim. Ev., 8th ed., 750; *State* v. *Bradley*, 64 Vt. 466.

ROWELL, J. This is an indictment for the murder of John E. Holloway, by poison, on March 9, 1895.

All the exceptions now relied upon except two, relate to the admission of testimony concerning the relations that existed between the prisoner and Holloway's wife before and at the time of the homicide, and to their relations with the deceased at the same time. This testimony commenced

with the prisoner's first acquaintance with Mrs. Holloway at the Barton fair in the fall of 1894, and traced them step by step from that time till the homicide. It showed how their intimacy sprang up; how it grew and increased by the things it fed on, until it became and continued to be adulterous; how, in course of time and on several occasions, they together tried to induce the deceased to agree to a separation between him and his wife and a division of the property, which, two days before the homicide, he refused to do on terms as to property satisfactory to them. It showed that the deceased was largely cognizant of how things were going on between the prisoner and his wife, whereat he was much displeased; that frequent quarrels took place between him and them concerning it, in some of which the prisoner inflicted blows upon him. It strongly tended to show that the prisoner had a consuming passion for the woman, and so desired to possess and enjoy her that he determined to overcome all obstacles that stood in the way of it, and that, as her husband was the chief obstacle, and could not be otherwise removed, he slew him. Some of the testimony, standing alone, might not have been admissible; but when it is all viewed together, as it must be, each part is so closely and naturally connected with every other part, and so explains and characterizes what might otherwise have been equivocal or indifferent, that all was properly and logically framed together, and constituted a harmonious whole, with the tendency indicated; and some of it also tended to show malice on the part of the prisoner towards the deceased.

The main ground urged against its admissibility is, that it was not competent to show an adulterous intercourse between the prisoner and the woman for the purpose of showing motive, for that the admission of such testimony for such a purpose is confined to cases in which a husband or wife is accused of murdering the other. But the law makes no

such distinction. Whatever tended to show motive was admissible; and that such a thing as this not only may, but often does, supply motive, cannot be doubted. The admissibility of such testimony to show motive was expressly ruled in *Pierson* v. *The People*, 79 N. Y. 424, 435, and we have no doubt of its entire correctness. There are other cases to the same effect.

All the minor objections to this testimony have been considered, and none of them found to be at all tenable. Take, for instance, the objection to the testimony of the witness Gilman that he staid at the Holloway house several nights between October 1, 1894, and the time of the homicide, and slept with the deceased, and that on all the nights that he staid there, the door between the deceased's bedroom and the prisoner's bedroom was fastened on the prisoner's side, against the will of the deceased. The objection is that it did not appear that the prisoner had anything to do with fastening the door. It appeared that there were but three bedrooms on the second floor of the house, and that they were in a row; that the deceased occupied one of the end rooms and his wife the other, while the prisoner occupied the middle room; that there was a door from the prisoner's room into the wife's room as well as one from his room into the deceased's room, but that the deceased could not get from his room into his wife's room without going through the prisoner's room. It further appeared that the prisoner told the witness that the deceased accused him of locking the door, and that they had a row about it and came to blows, whereupon he went away from there. This testimony and these circumstances, in connection with the testimony concerning the relations of the prisoner and the woman, furnished ample proof that the prisoner did have to do with the fastening of that door; and they also furnished ample proof that his object and purpose was, thereby to better his chances for undetected intercourse with Mrs. Holloway.

The testimony that early in the morning of the homicide

the prisoner ran away in the road from the place where it was committed; and was called to come back and came, was properly admitted. That it appeared from the cross-examination of one of the state's witnesses that Mrs. Holloway said on that occasion that she wanted some one to go to Glover and get Magoon to do her chores, and that thereupon the prisoner started off, went to the weight, not to the competency, of the testimony. The question still was, whether or not his running away, in the circumstances, was indicative of conscious guilt.

It appeared that the prisoner, knowing that he was suspected of complicity in the murder, and being recognized to appear as a witness against Mrs. Holloway and Gilman, who stood charged with it, fled to Canada, where he passed under an assumed name, disguised himself in divers ways, and remained until arrested and brought back on this charge. It is objected that it was error to allow the fact of his disguise to be shown. But flight, concealment, disguise, and the like, are deemed relevant by the law, and it is every day practice to receive them.

*Judgment that there is no error in the proceedings of the county court, and that the respondent take nothing by his exceptions.*