## BILLINGS *v.* UNITED STATES.*

---

CRIMINAL LAW; EVIDENCE OF OTHER CRIMES.

1. Evidence is inadmissible in a criminal case to show that under another name the accused previously committed another and distinct crime, where his identity is not in issue.

2. Evidence that one charged with crime falsely denied having been arrested on another occasion is not admissible in evidence as tending to show consciousness of guilt of the crime charged.

No. 2712.  Submitted October 6, 1914.  Decided November 2, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia convicting him of robbery.                     *Reversed.*

---

* *Evidence.*—The general subject of admissibility of evidence of other crimes in a criminal prosecution is discussed in the note to People v. Molineux, 62 L.R.A. 193. As to evidence of other crimes in a prosecution for larceny, see note to State v. Gillies, 43 L.R.A.(N.S.) 776.

The Court in the opinion stated the facts as follows:

The defendant, James C. Billings, appellant here, was convicted in the supreme court of the District under an indictment charging him with robbery. While the evidence before the jury tended strongly to establish guilt, it was largely circumstantial.

In the opening statement the assistant district attorney, over the objection of the defendant, told the jury that when the defendant was arrested he gave the name of James C. Billings, and that after he had been taken to police headquarters a photograph was shown him by a detective, who asked him whether it was his photograph; that, when he answered "No," the detective said: "You certainly have a double, then; that certainly is your photograph. * '* * You are Jack Arthur, and it is no wonder that you deny your identity." This detective was called by the government as a witness, and testified that he asked the defendant whether he had ever been arrested, and that defendant answered in the negative. Counsel for the defendant moved that this be struck out, but, after a colloquy with the court, consented to let the answer stand "for the time being." The witness then testified that, after the defendant's picture had been taken at police headquarters, a picture was handed the witness *"by one of the men in the gallery,"* which the witness exhibited to the defendant, and that the witness said: "What have you got to say now? Do you still say that you have never been arrested before?" that the witness did not answer. To this objection was made, and, the ruling being adverse, an exception was noted. The assistant district attorney then said to the witness: "Do not state the character of the picture or anything relating to this picture, or if there was a record, do not refer to it, but just testify as to the conversation you had with him with reference to the picture. You say that he denied that it was his picture? Is that correct?" The witness answered: "No, he did not deny that that was his picture. He denied in No. 1 Station that he had ever been arrested before, and when this picture was produced I held it up in front of him, and I said, 'Do you still insist that you have never been

arrested before?' " The witness was then asked whether the
defendant answered the question, and replied: "He then said
that he had no statement to make, but my reply to him was—."
The assistant district attorney then said, "Never mind that,"
but counsel for the defendant said, "Let us have it all." The
witness then proceeded to state what he had said to the defend-
ant.

The defendant did not testify, and there was no evidence
before the jury as to his identity, other than the statement he
made, immediately following his arrest, that his name was Bill-
ings. The government now seeks to justify the admission of
the above testimony upon the ground that it tended to prove
that the defendant, "immediately after being charged with the
robbery, made false statements in an effort to exculpate him-
self."

*Mr. Peyton Gordon* and *Mr. Matthew E. O'Brien* for the
appellant.

*Mr. Clarence R. Wilson,* United States District Attorney,
and *Mr. S. McComas Hawken,* Assistant, for the United States.

Mr. Justice Robb delivered the opinion of the Court:

The identity of the accused was not in issue at the trial, and
it was not competent for the government to prove that, under
another name, he had committed another and independent crime.
And yet such was the trend and substantial effect of the evi-
dence of this detective. While, generally speaking, it is compe-
tent to show that at or about the time of the crime the accused
told falsehoods about himself,—for instance by giving false
reasons for his presence in the town where the crime was perpe-
trated (*State* v. *Lambert,* 104 Me. 394, 71 Atl. 1092, 15 Ann.
Cas. 1055; *State* v. *Jennings,* 48 Or. 483, 87 Pac. 524, 89 Pac.
421),—such testimony, to be admissible, must indicate a con-
sciousness of guilt of the crime charged; in other words, that
when charged with the commission of the particular crime the

accused sought to avoid the charge by uttering falsehoods. Such testimony is admissible, as is testimony of flight, when received as a circumstance having a tendency to prove guilt. So, too, it is permissible to show that one knowing that he was suspected of a crime fled and lived in disguise, under an assumed name. *State* v. *Chase,* 68 Vt. 405, 35 Atl. 336. But we fail to perceive how the denial by the defendant, at the time of his arrest, that he had previously been arrested, could be said to indicate a consciousness of committing this robbery, even although the government had followed up that testimony with proof that he had been thus arrested under another name. The fact in issue was the guilt or innocence of the defendant of the crime charged, and the presumption of innocence attended him at the trial. And yet the jury were clearly given to understand that he was a man with a criminal record. The language used by the detective was talismanic. Undoubtedly the jury understood that the "gallery" referred to was the "rogues' gallery," and appreciated to the fullest extent the allusion to the photograph which the detective had shown the defendant.

In *State* v. *Shuford,* 69 N. C. 486, it was held error to permit a witness, at the trial of a mother for the murder of her infant child, to relate a statement made by the mother of the defendant in her presence and about the time of her arrest, that the defendant "had a child this way before, and put it away," to which the defendant made no reply. The court observed that there was no connection between the two crimes, and that evidence tending to prove the former "was wholly irrelevant, but well calculated to prejudice and mislead a jury."

In the present case it is not unlikely that the result would have been the same had the inadmissible testimony been excluded, but we cannot assume that it would have been. It clearly appearing that this testimony was prejudicial to the defendant, it is our duty to reverse the judgment, to the end that he may have a fair and impartial trial. It is so ordered. *Reversed.*