George P. BRADLEY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20710.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 18, 1968.

Decided Nov. 5, 1969.

man in the bedroom of her apartment. The man held a sharp object against her neck, choked her, and ordered her to disrobe. She refused and succeeded in pushing him away. The man then turned on the bedroom light and talked with her for about 15 minutes; asked about his entry into the apartment, he stated that "someone was chasing him, and he ran in * * *."[1] He demanded money, searched her handbag, and departed.

The Metropolitan Police Department was immediately notified and was furnished a general description of the intruder. Officer Melvin Hardy, dispatched to the apartment with that description, saw a man standing at a bus stop near the entrance to the apartment building. Officer Hardy conversed with the man for several minutes, during the course of which the man said his name was George Bradley.[2] The officer continued on to the apartment, where Mrs. Whitten amplified the description, and it fitted the man the officer had just left. Officer Hardy then went back to the bus stop, but the man was gone.

Mr. Seymour J. Spelman, Washington, D. C. (appointed by this court) for appellant.

Mr. Gene S. Anderson, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, and Donald S. Smith, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT, McGOWAN and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Mary Whitten was awakened about 2:00 a. m. on July 4, 1966, by a strange

Nine days later, at about 11:45 a. m. on July 13, Courtney Whitten, Mrs. Whitten's 15-year old daughter, left the apartment to go to a store. When she returned, she was accompanied by two friends, James Edward Anderson and Charles Nowlin. Upon reentering the apartment, one of her companions found appellant attempting to hide behind a bedroom door. In explanation, appellant stated that a friend had brought him there and departed, and that he was awaiting the friend's return, due in about a half hour.[3] Appellant's captors waited out the half hour and, the alleged friend not reappearing, then summoned the police.

1. It was later discovered that the entry had been effected through the locked rear door of the apartment.

2. The officer remained in his cruiser, conversing with appellant through a window. There is no indication that appellant was under any sort of restraint, or that more than conversation occurred. We see no problem arising under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and appellant suggests none. See id. at 477–478, 86 S.Ct. 1602.

3. Appellant refused to furnish the name of the alleged friend. See note 62, infra.

Appellant was tried before a jury in the District Court on a rewritten two-count indictment charging housebreakings [4] on July 4 and 13.[5] At the trial, Mrs. Whitten identified appellant as the man in the apartment on July 4, and Officer Hardy identified him as the man at the bus stop on that date. Miss Whitten and her two companions identified appellant as the man in the apartment on July 13. Appellant sought by his own testimony and that of three other witnesses to establish an alibi for July 4, but offered no defense at all to the July 13 charge. The jury convicted on both counts.[6]

Appellant's sole contention on this appeal stems from his unsuccessful motion for a severance of the two housebreaking charges for separate trial. Appellant's trial counsel [7] argued strenuously that prejudice would flow from the jurors' opportunities to cumulate the evidence as to each of the charges if they were tried together. Counsel also informed the trial judge that appellant wished to testify defensively as to the July 4 incidents but not as to those of July 13, and urged that joint trial of the two charges would present appellant with an irreconcilable dilemma. Before us it is insisted additionally that prejudice to appellant was heightened by allegedly improper comment in the prosecutor's closing address to the jury and by a segment of the judge's charge.[8] In the succeeding parts of this opinion we discuss these contentions, and in the end we affirm appellant's convictions.

**I**

The two-count indictment upon which the trial proceeded charged appellant with separate housebreakings into the same apartment within a nine-day period. It seems clear that the two housebreakings were properly joinable in a single indictment as "offenses * * of the same or similar character," [9] and

---

4. D.C.Code § 22–1801 (1967), since amended (Supp. II 1969).

5. The grand jury returned a four-count indictment charging appellant with housebreaking with intent to commit an assault on July 4, housebreaking with intent to commit larceny on July 4, housebreaking with intent to commit an assault on July 13, and housebreaking with intent to commit larceny on July 13. At the trial, on stipulation of counsel in consultation with the judge, the indictment was redrafted. Largely retaining the grand jury's language, the charges were merged into two counts, one of housebreaking on July 4 with intent to commit assault or to commit larceny or both, and the other of housebreaking on July 13 with intent to commit an assault or larceny or both.

6. The verdicts were guilty of housebreaking on July 4 with intent both to commit assault and to steal property, and guilty of housebreaking on July 13 with intent to steal property. A sentence of imprisonment for three to nine years was imposed on each count, to be served concurrently.

7. Not his counsel on appeal.

8. This facet of appellant's position caused us to defer our decision herein. Prior to submission of this case on appeal, the Supreme Court had granted a writ of certiorari in a case, Perez v. California, 390 U.S. 942, 88 S.Ct. 1055, 19 L.Ed.2d 1131 (1968), discussed *infra* note 66, involving a similar question, and had heard argument in that case four days prior to oral argument before us. For this reason, we entered an order *sua sponte* postponing our decision until after the Supreme Court's disposition of *Perez*. Now that *Perez* has been disposed of, 395 U.S. 208, 89 S.Ct. 1767, 23 L.Ed.2d 212 (1969), see note 66, *infra*, we now finalize our views in this opinion.

9. "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). See also Blunt v. United States, 131 U.S. App.D.C. 306, 311, 404 F.2d 1283, 1288 (1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1021, 21 L.Ed.2d 221 (1969); Baker v. United States, 131 U.S.App. D.C. 7, 20–23, 401 F.2d 958, 971–974 (1968); Gray v. United States, 123 U.S.

appellant does not suggest the contrary. Instead, his contention is that the circumstances, particularly his stated desire to testify on but one of the counts, portended such harm to appellant that the trial judge erred in refusing to sever the counts for trial.[10] The judge, however, deeming evidentiary items of each housebreaking mutually admissible at a trial of the other, foresaw no greater detriment in a joint trial than in separate trials of the charges. The Government argues vigorously that, for the same reason, appellant was not any worse off simply in consequence of their simultaneous trial.

The basic principles by which this controversy is to be resolved are well settled in this jurisdiction. Although counts are permissibly joined in the same indictment for purposes of charging the accused, the court, upon appropriate motion and a showing of prejudice, should order their separate trial or an election by the Government.[11] With appellant inviting the trial judge's consideration of dangers long viewed as sources of potential prejudice,[12] it became incumbent upon him to "weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration." [13]

This the judge did, indulging full argument by counsel. The factor of greatest significance in the judge's decision to permit trial of both counts was his view that appellant would not benefit were the counts to be severed. The judge felt that on certain of the issues arising in a separate trial of either housebreaking charge, evidence of circumstances involved in the other would have a legitimate role, so that nothing would be gained by separation. This result, the judge held, would not vary in the event that appellant should take the witness stand in one separate trial but not in the other. We move now to a discussion of the bearing these two considerations had on the issue at hand.

## II

Few doctrines are more firmly established than the "principle of long

App.D.C. 39, 40, 356 F.2d 792, 793 (1966); Daly v. United States, 119 U.S. App.D.C. 353, 354, 342 F.2d 932, 933 (1964), cert. denied, 382 U.S. 853, 86 S.Ct. 102, 15 L.Ed.2d 91 (1965); Drew v. United States, 118 U.S.App.D.C. 11, 13, 331 F.2d 85, 87 (1964).

10. "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. * * *" Fed.R.Crim.P. 14.

11. Blunt v. United States, *supra* note 9, 131 U.S.App.D.C. at 311, 404 F.2d at 1288; Baker v. United States, *supra* note 9, 131 U.S.App.D.C. at 23, 401 F.2d at 974; Gregory v. United States, 125 U.S.App.D.C. 140, 144, 369 F.2d 185, 189 (1966); Cross v. United States, 118 U.S.App.D.C. 324, 326, 335 F.2d 987, 989 (1964); Drew v. United States, *supra* note 9, 118 U.S.App.D.C. at 13, 331 F.2d at 87.

12. "The justification for a liberal rule on joinder of offenses appears to be the economy of a single trial. The argument against joinder is that the defendant may be prejudiced for one or more of the following reasons: (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one." Drew v. United States, *supra* note 9, 118 U.S.App.D.C. at 14, 331 F.2d at 88. See also Blunt v. United States, *supra* note 9, 131 U.S. App.D.C. at 311–312, 404 F.2d at 1288–89; Baker v. United States, *supra* note 9, 131 U.S.App.D.C. at 23, 401 F.2d at 974; Cross v. United States, *supra* note 11, 118 U.S.App.D.C. at 326, 335 F.2d at 989.

13. Drew v. United States, *supra* note 9, 118 U.S.App.D.C. at 14, 331 F.2d at 88.

standing in our law that evidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged." [14] As we have remonstrated, "[s]ince the likelihood that juries will make such an improper inference is high, courts presume prejudice and exclude evidence of other crimes unless that evidence can be admitted for some substantial, legitimate purpose." [15] By the same token, "criminal propensity" prejudice will require separate trials of joined offenses where to each its own evidentiary details must be confined.[16]

■ We have, however, in common with the authorities generally,[17] recognized exceptions to these broad formulations.[18] Evidence disclosing another crime is admissible in situations where "the prejudicial effect may be outweighed by the probative value." [19] Correspondingly, where, "under the rules relating to other crimes, the evidence of each of the crimes on trial would be admissible in a separate trial for the other, the possibility of 'criminal propensity' prejudice would be in no way enlarged by the fact of joinder." [20] This is so for the rather obvious reason that "[i]n such cases the prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials." [21] Consequently, where evidence of joined offenses would be mutually admissible in separate trials of those offenses, severance is not ordinarily required on account of "criminal propensity" prejudice.[22] And this precept "does not require that every item of evidence relating to one offense be admissible in a separate trial for the other, but rather looks in a broader sense to whether the rules relating to 'other crimes' evidence have been satisfied." [23]

---

14. *Id.* at 15, 331 F.2d at 89 (emphasis in original) *and authorities cited in note 7 thereof.*

15. *Id.* at 15–16, 331 F.2d at 89–90.

16. Gregory v. United States, *supra* note 11, 125 U.S.App.D.C. at 144, 369 F.2d at 189; Drew v. United States, *supra* note 9, 118 U.S.App.D.C. at 18–19, 331 F.2d at 92–93.

17. See 1 F. Wharton, Criminal Evidence §§ 233–234 (12th ed. 1955) ; 1 J. Wigmore, Evidence § 218 (3d ed. 1940) ; 2 J. Wigmore, Evidence §§ 300–370, 416.

18. The rule respecting "other offenses" evidence is sometimes stated in inclusionary form—that such evidence is admissible save when proffered simply to show criminal character—and sometimes in exclusionary form—that such evidence is not admissible save for one or more of a number of exceptional purposes. See United States v. Deaton, 381 F.2d 114, 116–117 (2d Cir. 1967). We have stated the rule both ways. Compare, *e. g.,* Harper v. United States, 99 U.S.App. D.C. 324, 325, 239 F.2d 945, 946 (1956) with Fairbanks v. United States, 96 U.S. App.D.C. 345, 347, 226 F.2d 251, 253 (1955). While the former connotes a wider range of admissibility, United States v. Deaton, *supra,* 381 F.2d at 117, see also Spencer v. Texas, 385 U.S. 554,

561, 87 S.Ct. 648, 17 L.Ed.2d 606 n. 7 (1967) and authorities cited, this litigation presents no occasion for selection between the two since under either the evidence in question would in our view have been admissible.

19. Drew v. United States, *supra* note 9, 118 U.S.App.D.C. at 16, 331 F.2d at 90. We there summarized the law in the statement that "[e]vidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial." *Id.*

20. *Id.* at 16, 331 F.2d at 90.

21. *Id.*

22. Blunt v. United States, *supra* note 9, 131 U.S.App.D.C. at 311, 404 F.2d at 1288; Baker v. United States, *supra* note 9, 131 U.S.App.D.C. at 23, 401 F.2d at 974; Drew v. United States, *supra* note 9, 118 U.S.App.D.C. at 16, 331 F.2d at 90.

23. Baker v. United States, *supra* note 9, 131 U.S.App.D.C. at 24, 401 F.2d at 975.

Appellant concedes the probability that the Government's evidence describing the July 4 housebreaking and associating appellant as the housebreaker could have been let in at a separate trial of the July 13 charge. We ourselves have no doubt as to the propriety of a ruling admitting that evidence for the purpose of showing a criminal motive [24] and intent [25] underlying the entry appellant indisputably made into the apartment on the latter date. We believe also, contrarily to the position appellant advances, that the trial judge might properly have received evidence of appellant's presence in the apartment on July 13 in a separate trial for the July 4 offense on the issue as to whether he was the party who committed that offense.

Our past decisions, in line with the general American view,[26] recognize fully that evidence indicating the accused's identity as the perpetrator of one offense may be admissible for that purpose despite its exposure of his involvement in other crime.[27] The basis for admission is but an application of the principle "that, where a circumstance is relevant for some purpose, the incidental revelation, in offering it, of *other criminal conduct* by a defendant does not stand in the way of receiving the evidence." [28] That is not to say that every item having some tendency to show identity is automatically to be made available to the jury. An inexorable requirement, obtaining as to all evidence unveiling another offense, is that its probative virtues must outweigh its prejudicial proclivities.[29] "[T]he rule," we have declared, "is that evidence of other offenses is admissible when substantially relevant to the offense charged; inadmissible when its relevance is insignificant; and, in borderline cases, admissible when its relevance outweighs the undue prejudice that may flow from it, but otherwise inadmissible." [30] Thus "other offense" evidence proffered on an issue of identity must promise a real contribution in the process of proof of identity, for otherwise its help will be surpassed by its hurt.[31] A reasonable need for the evi-

24. See Fall v. United States, 60 App.D.C. 124, 130–131, 49 F.2d 506, 512–513, cert. denied, 283 U.S. 867, 51 S.Ct. 657, 75 L.Ed. 1471 (1931); Eagles v. United States, 58 App.D.C. 122, 124, 25 F.2d 546, 548, cert. denied, 277 U.S. 609, 48 S.Ct. 603, 72 L.Ed. 1013 (1928); McHenry v. United States, 51 App.D.C. 119, 123, 276 F. 761, 765, 34 A.L.R. 1109 (1921).

25. See Cantrell v. United States, 116 U.S. App.D.C. 311, 312, 323 F.2d 613, 614 (1963), cert. denied, 376 U.S. 955, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964); Harper v. United States, *supra* note 18, 99 U.S.App.D.C. at 326–327, 239 F.2d at 947–948; Green v. United States, 88 U.S. App.D.C. 249, 188 F.2d 48, cert. denied, 341 U.S. 955, 71 S.Ct. 1008, 95 L.Ed. 1376 (1951); Copeland v. United States, 80 U.S.App.D.C. 308, 309, 152 F.2d 769, 770 (1945), cert. denied, 328 U.S. 841, 66 S.Ct. 1010, 90 L.Ed. 1815 (1946); Fall v. United States, *supra* note 24, 60 App.D.C. at 130–131, 49 F.2d at 512–513.

26. See 1 F. Wharton, Criminal Evidence § 235 (12th ed. 1955); 2 J. Wigmore, Evidence § 416 (3d ed. 1940).

27. See Eagles v. United States, *supra* note 24, 58 App.D.C. at 124, 25 F.2d at 548. See also Drew v. United States, *supra* note 9, 118 U.S.App.D.C. at 16, 331 F.2d at 91, quoted *supra* note 19; Bracey v. United States, 79 U.S.App.D.C. 23, 25–26, 142 F.2d 85, 88–89, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944). *Cf.* Martin v. United States, 75 U.S.App.D.C. 399, 400, 127 F.2d 865, 866 (1942). See also the cases cited *infra* notes 41, 43.

28. 2 J. Wigmore, Evidence § 416 (3d ed. 1940).

29. Drew v. United States, *supra* note 9, 118 U.S.App.D.C. at 15–16, 331 F.2d at 89–90; Harper v. United States, *supra* note 18, 99 U.S.App.D.C. at 325, 239 F.2d at 946. Compare Luck v. United States, 121 U.S.App.D.C. 151, 156–157, 348 F.2d 763, 768–769 (1965).

30. Harper v. United States, *supra* note 18, 99 U.S.App.D.C. at 325, 239 F.2d at 946.

31. Compare Martin v. United States, *supra* note 27, with Eagles v. United States, *supra* note 24, 58 App.D.C. at 124, 25 F.2d at 548. See also Boyd v. United

dence must exist,[32] and for as much detail as is to be let in,[33] lest its value be exceeded by its damage. In sum, admissibility depends upon a plus-quality in terms of its evidentiary capability in balance with its harmful portent.

We find a plus-quality here. Only nine days previous to appellant's apprehension in Mrs. Whitten's apartment, there was an unauthorized entry into that apartment. The entrant on that occasion closely matched appellant's description, a distinctive feature of which is his small size.[34] Like appellant did on July 13, the intruder on July 4 gave an explanation for his presence in the apartment which a jury could well regard as bizarre.[35] Near 3:00 a. m. on July 4— minutes after the intruder left the apartment—a man answering appellant's description was at a bus stop outside the apartment, and that man told Officer Hardy that his name was George Bradley. Unquestionably, a George Bradley —the appellant here—was in the apartment on July 13.

The crucial issue developing on the July 4 housebreaking charge was the identity of the housebreaker, and on that issue the evidence was sharply divided. For the Government there was Mrs.

Whitten's identification placing appellant inside the apartment, and Officer Hardy's placing him just outside minutes later. On the other hand, there was appellant's testimony, backed by three more witnesses, that he was elsewhere at the time of the offense. The Government had the burden of proof beyond a reasonable doubt, and to help to carry it had nothing occurring on July 4 that tended to confirm the accuracy of the two identifications. Particularly in the face of appellant's alibi, corroboration of the identifications was calculated to play a significant and perhaps decisive role.[36] We cannot view the events of July 13 as unnecessary evidentiary additions serving an exclusive or primary function of cumulating unintegrated items of criminal conduct against appellant.

■ The rule admitting proof disclosing another crime to show the accused's identity as the perpetrator of the offense on trial does not demand that the two episodes possess factual sameness in every detail.[37] The inquiry, rather, is whether the two have enough in common to justify a cautious judgment that the probative force of the common details received in evidence is appreciable,[38] and so much so as in the scheme

States, 142 U.S. 450, 454–458, 12 S.Ct. 292, 35 L.Ed. 1077 (1892).

32. See Billings v. United States, 42 App. D.C. 413, 415 (1914), where the defendant's identity was not in issue. Unlike the situation there, the sole issue in the July 4 count was appellant's identity as the housebreaker, and that issue was hotly contested. See also notes 36 and 42, *infra*, and accompanying text.

33. *E. g.*, Boyd v. United States, *supra* note 31, 142 U.S. at 458, 12 S.Ct. 292.

34. The record indicates that appellant, 22 years of age, is only about five feet three inches in height.

35. See text *supra* at notes 1, 3.

36. Thus we further distinguish Billings v. United States, *supra* note 32. And see the cases cited *infra* note 42.

37. People v. Perez, 65 Cal.2d 615, 55 Cal. Rptr. 909, 422 P.2d 597, 599 (1967), cert. dismissed, 395 U.S. 208, 89 S.Ct. 1767, 23 L.Ed.2d 212 (1969). Sometimes the

proof includes a showing of the *modus operandi, e. g.,* Gray v. United States, *supra* note 9, 123 U.S.App.D.C. at 40, 356 F.2d at 793, but, depending upon the identifying links, that may not be essential, *e. g.,* Frazier v. State, 135 Ind. 38, 34 N.E. 817, 818 (1893) (single footprint). See also the cases cited *infra* note 41. An important circumstance here is that appellant unquestionably was the person found in the apartment on July 13.

38. "So far as there can be any general principle of Admissibility, it is perhaps to be stated as follows: A mark common to two supposed objects is receivable to show them to be identical *whenever the mark does not in human experience occur with so many objects that the chances of the two supposed objects are too small to be appreciable.* But it must be understood that this test applies to the total combination of circumstances offered as a mark, and not to any one circumstance going with others to make it up." 2 J.

of jurisprudential values to outweigh the potential harm to the accused.[39] In turn, the substantiality of evidentiary indications of identity goes up in much the same proportion as the chances of misidentification come down.[40] In the case before us, a jury could logically find that the several similarities inhering in the two entries into Mrs. Whitten's apartment connoted much more than pure coincidence.[41] For the same reason, in a separate trial of the July 4 housebreaking count, the judge, on balance of probative worth and prejudicial propensities, could allow the Government to show appellant's presence in the apartment on July 13 and the circumstances common to both intrusions [42] in corroboration of Mrs. Whitten's identification of appellant as the July 4 housebreaker, and of Officer Hardy's identification of him as the man at the bus stop on that date and as the George Bradley who is our appellant.[43]

Here the trial judge, after hearing counsel on both sides, struck the balance in favor of the Government. He concluded, as he properly could, that even in the event of severance the Government should be permitted to use evidence of the July 13 incident as part of its proof of the July 4 offense. In consequence, he felt that nothing would be gained by a severance, and we have no cause to upset that conclusion either.[44] No more than he are we able to perceive in the circumstances any "criminal propensity" prejudice to the defense of the July 4 charge simply because the same jury heard the details of the July 13 offense.[45]

Wigmore, Evidence § 412 (3d ed. 1940) (emphasis in original).

39. See text *supra* at notes 15, 19, 29–33.

40. "[I]n the process of identification of two supposed objects, by a common mark, the force of the inference depends on the *degree of necessariness of association of that mark with a single object.*" 2 J. Wigmore, Evidence § 411 (3d ed. 1940) (emphasis in original).

41. Compare Gray v. United States, *supra* note 9, 123 U.S.App.D.C. at 40, 356 F.2d at 793; People v. Mandrell, 306 Ill. 413, 138 N.E. 215, 216, 217 (1923); Frazier v. State, *supra* note 37, 34 N.E. at 818; State v. Caton, 134 Kan. 128, 4 P.2d 677, 678 (1931); Whiteman v. State, 119 Ohio St. 285, 164 N.E. 51, 63 A.L.R. 595 (1928). See also the cases cited *infra* note 43.

42. Perhaps the most singular of the circumstances was the statement of name by the man at the bus stop outside the apartment on July 4—the same name as appellant's. As a single indication of identity, the utterance means little or nothing when standing alone, but it takes on real significance when coupled with the events of July 13. Evidence of identity grows stronger as circumstances accumulate to reduce the possibilities of difference. See note 40, *supra*, and accompanying text. A jury could reasonably consider the possibilities much narrowed by appellant's undisputed, ill-explained presence in the same apartment only nine days later. Compare 1 J. Wigmore, Evidence § 411 at 386 (3d ed. 1940).

43. See People v. Thompson, 406 Ill. 555, 94 N.E.2d 349, 351 (1950); Thomas v. State, 132 Fla. 78, 181 So. 337 (1937); Warren v. State, 178 Tenn. 157, 156 S.W.2d 416, 418–419 (1941). See also James v. State, 53 Ariz. 42, 84 P.2d 1081, 1083 (1938).

44. We realize, of course, that in a joint trial more details of the July 13 affair could properly come into evidence than might be permissible in a separate trial of the July 4 offense. For in the former, the joint trial, all competent evidence relevant to proof of the July 13 charge was receivable, while at a separate trial of the July 4 count evidence relating to the July 13 incident would be limited to the exigencies of proof of identity. See note 18, *supra*. We recognized the distinction in Baker v. United States, *supra* note 9, and held that it was without difference in result. 131 U.S.App.D.C. at 24, 401 F.2d at 975, quoted in text *supra* at note 23.

45. Nor do we perceive any probability that joint trial of the two charges resulted in a muddling of the issues. As in Dunaway v. United States, 92 U.S.App.D.C. 299, 303, 205 F.2d 23, 26 (1953), the Government's evidence "was not lengthy. It was simple. It was unlikely to cause confusion. The evidence as to each charge was readily referable to the crime with respect to which it was introduced."

## III

As we have stated, defense counsel informed the trial judge, in support of the motion for severance, that appellant wished to testify to the July 4 count but not to the July 13 count, and that joint trial of the two charges would prejudice that endeavor. Counsel referred the judge to the discussion in our *Cross* decision [46] of the elements of prejudice that such a situation may prophesy. There we said:

> Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence. His decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment, and cross-examination. But if the two charges are joined for trial, it is not possible for him to weigh these factors separately as to each count. If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other count. Thus he bears the risk on both counts, although he may bene-

fit on only one. Moreover, a defendant's silence on one count would be damaging in the face of his express denial of the other. Thus he may be coerced into testifying on the count upon which he wished to remain silent.[47]

We have, however, been careful to point out that the accused's election to testify on some but not all of the charges on trial does not automatically require a severance.[48] "Such a rule," we said in our Baker opinion,[49] "in fact, would divest the court of all control over the matter of severance and entrust it to the defendant."[50] There remains with the trial judge, we have indicated plainly, a discretion in the matter,[51] though a discretion within limits narrowly confined by the exigencies of the situation. In the end, it is incumbent upon the judge "to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying,"[52] and to grant or deny the severance accordingly.

Careful examination and analysis of the record before us leads inevitably to the conclusion that the elements of prejudice from non-severance were minimal. Unlike *Cross,* the two joined offenses were not "clearly distinct in time, place

46. *Supra* note 11.

47. 118 U.S.App.D.C. at 326, 335 F.2d at 989 (footnotes omitted). As we later explained in Baker v. United States, *supra* note 9, 131 U.S.App.D.C. at 25, 401 F.2d at 976, "[t]he essence of our ruling in *Cross* was that, because of the unfavorable appearance of testifying on one charge while remaining silent on another, and the consequent pressure to testify as to all or none, the defendant may be confronted with a dilemma: whether, by remaining silent, to lose the benefit of vital testimony on one count, rather than risk the prejudice (as to either or both counts) that would result from testifying on the other."

48. Blunt v. United States, *supra* note 9, 131 U.S.App.D.C. at 312, 404 F.2d at 1289; Baker v. United States, *supra*

note 9, 131 U.S.App.D.C. at 25, 401 F.2d at 976.

49. *Supra* note 9, 131 U.S.App.D.C. at 25, 401 F.2d at 976.

50. *Id.*

51. Blunt v. United States, *supra* note 9, 131 U.S.App.D.C. at 312, 404 F.2d at 1289; Baker v. United States, *supra* note 9, 131 U.S.App.D.C. at 25–26, 401 F.2d at 976–977. The discretionary character of the ruling on a motion for severance is well settled. *E. g.,* Brown v. United States, 126 U.S.App.D.C. 134, 139, 375 F.2d 310, 315 (1966), cert. denied, 388 U.S. 915, 87 S.Ct. 2133, 18 L. Ed.2d 1359 (1967); Robinson v. United States, 93 U.S.App.D.C. 347, 349, 210 F. 2d 29, 32 (1954).

52. Baker v. United States, *supra* note 9, 131 U.S.App.D.C. at 26, 401 F.2d at 977.

and evidence;"[53] rather, as we have said, they bore such a relationship that evidence as to each was mutually admissible upon trial of the other.[54] Moreover, unlike *Cross*, our appellant was not "coerced into testifying on the count upon which he wished to remain silent;"[55] instead as he told the trial judge he wished to do, appellant took the witness stand and testified to his alibi to the July 4 housebreaking, and said nothing at all as to the events of July 13. This course was greatly facilitated by the prosecutor's abstention from any cross-examination of appellant relative to the July 13 incident;[56] additionally, there was no inquiry of appellant as to incriminating admissions he reportedly made to the police concerning that incident,[57] and no impeachment by reason of any prior criminal conviction.[58] Thus, unlike *Cross*, our appellant was able to testify on the charge he wished to counter without leaving himself "open to questioning concerning his generally tawdry way of life and his prior convictions."[59]

We must also reject appellant's claim that non-severance of the charges visited distinctive harm upon him by reason of an odious contrast of his testifying on the July 4 count and his remaining silent on the July 13 charge.[60] Any hurtful implication derivable from such a contrast presumably could have worked to appellant's detriment only with respect to the charge on which he did not undertake to testify[61]—the housebreaking of July 13—and on that charge appellant was already in deep trouble. Appellant was caught red-handed inside the apartment on July 13 attempting to secrete himself, and the Government had the witnesses to prove it. Appellant's only explanation for being there was the lame excuse that he was brought there by a friend whose return he was awaiting—a friend who never returned and whose identity appellant refused to disclose to his captors.[62]

Thus the Government's case of housebreaking on July 13 was strong, and in the absence of some defense by appellant a verdict of guilty was practically inevitable. Defense counsel's arguments to the trial judge for severance of the counts contained no representation that appellant would proffer any sort of defense to the July 13 charge, and the

53. Cross v. United States, *supra* note 11, 118 U.S.App.D.C. at 326, 335 F.2d at 989, quoted in text *supra* at note 47.

54. See text *supra* at notes 34–43.

55. Cross v. United States, *supra* note 11, 118 U.S.App.D.C. at 326, 335 F.2d at 989, quoted in text *supra* at note 47.

56. Although the trial judge denied appellant's motion to limit the prosecutor's cross-examination of appellant to the July 4 incident, as to which he wished to testify, the prosecutor stipulated with defense counsel that the cross-examination would be so limited, and it was. We intimate no view as to the validity of the trial judge's ruling.

57. Defense counsel advised the court of the possibility that appellant had made such admissions, but the prosecutor stated that the Government would not undertake to place any such admissions into evidence.

58. The record does not show whether appellant had any prior criminal conviction.

59. Cross v. United, States, *supra* note 11, 118 U.S.App.D.C. at 327, 335 F.2d at 990.

See also Baker v. United States, *supra* note 9, 131 U.S.App.D.C. at 26, 401 F.2d at 977.

60. See Cross v. United States, *supra* note 11, 118 U.S.App.D.C. at 326, 335 F.2d at 989, quoted in text *supra* at note 47. While, as we hold, text *supra* at notes 34–43, evidence of either offense would have been admissible at a separate trial of the other, separate trials would have avoided the spectacle before the jury, of the accused offering testimony as to one offense but not as to the other. Thus the contrast possible in such a situation is a danger of a joint trial but not of separate trials of two or more offenses.

61. Compare Baker v. United States, *supra* note 9, 131 U.S.App.D.C. at 26–27, 401 F.2d at 977–978 n. 88. And if this were not so, it was appellant's duty to so inform the trial court. See note 64, *infra*, and accompanying text.

62. Charles Nowlin asked appellant, when he was caught in the apartment, to name the friend, but appellant would not do so.

**1124**

arguments indicated that no such defense was contemplated, for either a joint or a separate trial. On that premise, we fail to see how the contrast in testimonial conduct in a joint trial could have added significantly to the damage inherent in leaving the Government's case on the July 13 incident completely undefended.[63] If, on the other hand, a defense to that charge was planned, it was counsel's duty to so advise the trial judge in order that he could with greater intelligence exercise his discretion in the matter.[64] By either route, we must hold that the judge's refusal of severance in the face of appellant's planned testimony on the July 4 count only does not constitute ground for a new trial.[65]

## IV

Lastly we reach the contention that appellant was prejudiced, in a manner not possible in separate trials of the two housebreaking counts, by remarks the prosecutor made to the jury and by a passage in the trial judge's charge to the jury. During the course of his closing argument, the prosecutor, addressing the July 13 housebreaking charge, said:

> Do you know what he said, "A friend brought me there."

Now, I will tell you something, I would like to know where is that friend today. That's what he told James Anderson and that's what he told Charles Nowlin and that is what he said in the presence of Courtney Whitten, "Oh, I am here. A friend told me to wait here."

Where is the friend? Who is this friend?

If you were on trial and wound up in somebody's house by mistake because a fellow said, a person that you trusted said, "Wait here. I'll be right back. I am going around the corner to run an errand," why, you would be screaming from the roof tops that the friend is John Brown or John Jones or whoever it was that asked you to stay there. He lives at such and such an address and you would have him down here. You would have him here to testify to explain why you were in the house if you have an explanation, if you weren't a thief, if you weren't a burglar.

Appellant insists that this was an allusion to his failure to testify on the July 13 charge,[66] but we encounter difficulty

---

63. Compare Blunt v. United States, *supra* note 9, 131 U.S.App.D.C. at 312, 404 F. 2d at 1289, where we were "unwilling to rest a finding of prejudicial error on sheer speculation that appellant may have had a better alibi which he kept to himself."

64. "[N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying." Baker v. United States, *supra* note 9, 131 U.S.App.

D.C. at 26, 401 F.2d at 977 (footnotes omitted). See also Blunt v. United States, *supra* note 9, 131 U.S.App.D.C. at 312, 404 F.2d at 1289.

65. "A stronger showing of prejudice is required for reversal under Rule 14 than for reversal under Rule 8, since a misjoinder is always error, whereas a refusal to grant a severance is error only if it is an abuse of discretion." Blunt v. United States, *supra* note 9, 131 U.S.App.D.C. at 312, 404 F.2d at 1289 n. 16.

66. Compare Myrick v. United States, 219 F. 1, 8–12 (1st Cir. 1915), holding that an accused simultaneously tried on two indictments, who testified in reference to only one of the charges, did not waive his immunity from unfavorable comment on his failure to testify as to the other, with People v. Perez, *supra* note 37, 422 P.2d at 599–601, holding that an accused's Fifth Amendment privilege against self-incrimination was not violated by the prosecutor's comment and the court's in-

in reading the prosecutor's statements that way. The reference, certainly in broad import, was plainly to the explanation—that a friend had brought appellant into the apartment—which he gave Miss Whitten and her companions when he was found in the apartment on July 13, to his refusal to tell them who the alleged friend was, and to his failure to produce the friend as a witness at the trial.[67] While it is arguable that one who "would be screaming from the roof tops" would later be testifying from the witness stand, the context would seem to permit at most only a weak inference to that effect.

Even so, as a reference to a missing defense witness, the prosecutor's comments were improper here. Although a witness' "testimony would elucidate the transaction," [68] as clearly the alleged friend's version might easily have done, a party's failure to call him justifies an adverse inference only if it was "peculiarly within his power to produce" the witness.[69] Since the record before us is negative on that score, "one must speculate as to appellant's capability, and the more so as to one peculiar to him, to have brought forth * * * the uncalled witness[]."[70] And as ever so recently we emphasized, "[w]e have expressly outlawed comment * * * on absent witnesses which would have the effect of suggesting that an inference be drawn against a defendant because he failed to call to the stand a witness who would have to incriminate himself." [71] It is highly unlikely that the friend appellant claimed would not fall in this category.[72]

Though far less, if any, criticism can be directed toward the judge's charge, the passage under attack does give us pause. The court said:

> Now, under our American system of jurisprudence, the defendant in a criminal case does not have to take the stand, does not have to testify in his own behalf. So, the defendant in this case was not required to take the stand in his own defense and had he failed to do so, his failure to take the stand would not be subject to any adverse inference.
>
> The defendant in this case, however, did take the stand and so, while the law makes the defendant a competent witness in this case, you have the right to take into consideration his situation and his interest in the result of your verdict and all the circumstances which surround him, and to give to his testimony only such weight as in your judgment it is fairly entitled to receive.

structions on the accused's failure to testify respecting two robberies charged in a four-count information after he had taken the stand to deny the other two. The Supreme Court granted a writ of certiorari to review the latter decision, Perez v. California, 390 U.S. 942, 88 S.Ct. 1055, 19 L.Ed.2d 1131 (1968), but after oral argument dismissed the writ as improvidently granted, 395 U.S. 208, 89 S.Ct. 1767, 23 L.Ed.2d 212 (1969).

67. In this view, we encounter no question arising under Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

68. Wynn v. United States, 130 U.S.App. D.C. 60, 64, 397 F.2d 621, 625 (1967), and cases cited in notes 19–20, thereof.

69. Gass v. United States, 135 U.S.App. D.C. at 19, 416 F.2d 767 at 775 (1969) ; Stewart v. United States, 135 U.S.App. D.C. 274, 418 F.2d 1110 (Feb. 10, 1969) at 6–8; Wynn v. United States, *supra* note 68, 130 U.S.App.D.C. at 64, 397 F. 2d at 625, and cases cited in note 19, thereof.

70. Wynn v. United States, *supra* note 68, 130 U.S.App.D.C. at 64, 397 F.2d at 625.

71. Bradley v. United States, 136 U.S. App.D.C. 339, at 344, 420 F.2d 181, at 186 (Sept. 10, 1969) and cases cited in note 6, thereof.

72. The record contains no suggestion that the alleged friend had been given permission to go into the apartment.

Appellant argues that the jury might possibly have taken this to mean that inasmuch as appellant had taken the witness stand to deny the July 4 housebreaking, an adverse inference could be drawn from his failure to say anything about the charge of housebreaking on July 13.[73]

In the special circumstances of this case, however, we are of the view that the events complained of do not afford ground for a new trial. There was no objection to the prosecutor's comments,[74] and with the lack of objection was the loss of the most opportune occasion for investigating appellant's ability to produce the missing friend, if indeed there was one.[75] Nor was there objection to the judge's charge,[76] with the result that an opportunity for remedial clarification slipped by. More importantly, neither the prosecutor's statement nor the judge's was a pointed reference to appellant's omission to testify as to the second count;[77] their harmful propensity, if any, lay in the domain of uncertain innuendo, and any harm actually ensuing would have affected only the July 13 charge.[78] The Government's case on that charge was strong and convincing, considerably more so than on the July 4 count, and the absence of any sort of defense to the July 13 count rather clearly put the verdict thereon beyond peradventure of a doubt.

Under these conditions, we find it unnecessary to consider whether the prosecutor's observations or the judge's instructions were erroneous in the respects asserted by appellant. Other factors aside, the outcome on the second count, by our appraisal, was well nigh dictated by the Government's unopposed proof, irrespective of any adverse inference from appellant's silence in relation to it.[79] With this, we are not disposed to conclude that the events now complained of, which went unchallenged in the trial court, could amount to plain error affecting substantial rights.[80] And particularly with the added component that the likelihood that the jury actually drew any such inference is dubious, we feel "able to declare a belief that" any error there possibly could have been "was harmless beyond a reasonable doubt."[81]

Affirmed.

---

73. See note 66, *supra.*

74. Fed.R.Crim.P. 51. Compare Gass v. United States, 416 F.2d 767, at 775 *supra* note 69, and cases cited in note 46, thereof.

75. See Gass v. United States, 416 F.2d 767, at 775 *supra* note 69.

76. Fed.R.Crim.P. 30.

77. "[T]he test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Knowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955). See also Langford .v. United States, 178 F.2d 48, 54–55 (9th Cir.), cert. denied, 339 U.S. 938, 70 S.Ct. 669, 94 L.Ed. 1355 (1948).

78. See text *supra* at notes 61, 64 and accompanying notes.

79. Compare Blunt v. United States, *supra* note 9, 131 U.S.App.D.C. at 312, 404 F. 2d at 1289.

80. Compare Samuels v. United States, 398 F.2d 964, 967–969 (5th Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969); Langford v. United States, *supra* note 77, 178 F.2d at 54–55. See also Jackson v. United States, 102 F. 473, 487 (9th Cir. 1900). *Cf.* Stewart v. United States, 366 U.S. 1, 7–9, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961).

81. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1966).